## A10A0131. SMITH v. THE STATE.
(690 SE2d 449)

BLACKBURN, Presiding Judge.

Following a jury trial, Darrell Demond Smith was convicted of a single count each of trafficking in cocaine[1] and possession of a firearm by a convicted felon.[2] He now appeals from the denial of his motion for a new trial, asserting that the trial court erred by admitting into evidence: (1) an undercover videotape made by a now-deceased police informant; (2) hearsay testimony regarding statements made by that informant; and (3) the police booking photographs of Smith, taken after he was arrested. Smith further asserts that he received ineffective assistance of counsel. Discerning no error, we affirm.

Viewed in the light most favorable to the verdict, *Culver v. State*,[3] the evidence shows that in December 2005, the Douglasville Police Department was conducting an ongoing investigation into the sale of crack cocaine from a specific room (Room 103) at a local motel. As part of that investigation, narcotics detectives met with an informant on December 10, 2005 and sent him to the motel room to attempt a purchase of cocaine. The detectives equipped the infor-

---

[1] OCGA § 16-13-31 (a) (1).
[2] OCGA § 16-11-131 (b).
[3] *Culver v. State*, 290 Ga. App. 321 (659 SE2d 390) (2008).

mant with both an audio transmitter and a small video camera; the audio transmitter allowed the detectives to hear the informant and his conversations, while the camera recorded both audio and video of the informant's negotiation and purchase of crack cocaine. Police saw the informant enter the motel room and heard him, via the audio transmitter, attempt to negotiate the purchase of cocaine. They heard Smith's co-defendant tell the informant he would have to wait, because they were "cooking" the cocaine (i.e., they were preparing the crack). The officers then saw the informant exit the motel room and return to his car, where he waited for a few minutes before returning to Room 103, where officers heard him successfully purchase $20 worth of crack cocaine.

As the informant and his driver left the motel parking lot, they were followed by the narcotics detectives. All parties drove directly to police headquarters, where they met. At that meeting, the informant provided the detectives with the cocaine he had purchased and the detectives removed the audio transmitter, the video camera, and the tape from the informant's person.

Because the informant died prior to trial, the State called one of the narcotics detectives who had been working with him to authenticate and testify about the videotape. The investigator confirmed that the videotape was the same one he had obtained from the informant immediately after the transaction, and he also explained that the video camera was "automatic" — i.e., that it was very difficult to turn on and off; that once it was turned on it recorded until it was turned off; and that the person wearing the camera had no ability to manipulate it. The investigator further testified that he and his partner watched the videotape immediately after obtaining it from the informant, and that the sounds and events depicted thereon matched what they had heard over the audio transmitter. The videotape showed Smith and his co-defendant in Room 103, with Smith engaging in activity that appeared to involve "cooking" or preparing the crack.[4]

Because police viewed the transaction as part of an ongoing narcotics investigation, they did not apply for search or arrest warrants based on the videotape; nor did they plan to return to the motel that day. On the night of December 10, however, another Douglasville police officer responded to a reported armed robbery near the motel. The responding officer met the robbery victim in the motel parking lot, where the victim explained that he had been

---

[4] A copy of the videotape was not included in the record on appeal. However, the State also introduced into evidence still photographs, taken from the videotape, and those photographs were included in the record.

YALE LAW LIBRARY

robbed at gunpoint and that he had observed the robber entering Room 103 at the motel. The responding officer reported these facts over his police radio and requested back-up. Hearing this report, the narcotics detectives conducting the drug investigation proceeded to the scene, and one of them explained to the responding officer that there had been reports of a gun in the motel room.

Once he had back-up officers at the scene, the responding officer knocked on the door of Room 103, identified himself as a police officer, and demanded that the occupants open the door. The officer did this several times and, although he heard people moving around in the room, no one responded verbally or otherwise. After the third or fourth time the officer knocked, someone from inside the room partially opened the door, with the security chain in place. The officer detected the odor of burning marijuana and, when the occupants failed to open the door completely, the officer kicked it open. He then saw Smith and his co-defendant exiting the bathroom, with their hands up. Hearing the sound of a flushing toilet, a second officer entered the bathroom and retrieved what he believed to be cocaine out of the toilet. That officer also observed a handgun on the window sill in the bathroom, and police later discovered a second gun on the ground just below the open bathroom window.

Police recovered approximately 50.25 grams of crack cocaine from Room 103, in addition to the two handguns. Smith was subsequently indicted and tried on a single count each of trafficking in cocaine, possession of a firearm during the commission of a crime, and possession of a firearm by a convicted felon.[5] The jury acquitted him of the charge of possession of a firearm during the commission of a crime, but convicted him of the remaining charges. Smith now appeals from the trial court's denial of his motion for a new trial.

1. We first address Smith's challenges to the trial court's evidentiary rulings. "As a general rule, admission of evidence is a matter resting within the sound discretion of the trial court, and appellate courts will not disturb the exercise of that discretion absent evidence of its abuse." *Sullivan v. State*.[6]

(a) Smith first claims that the trial court erred in admitting into evidence the videotape made by the police informant in conjunction with the cocaine transaction that occurred earlier on the day in question, because: (i) given that he had not been charged with a crime in connection with that transaction, evidence of the same was highly prejudicial; and (ii) to the extent the tape was admitted as

---

[5] Smith's co-defendant was charged with trafficking in cocaine, armed robbery, possession of a firearm during the commission of a crime, and possession of a firearm by a convicted felon. Prior to trial, he entered into a negotiated guilty plea on these charges.

[6] *Sullivan v. State*, 242 Ga. App. 839, 840-841 (3) (531 SE2d 367) (2000).

similar transaction evidence, the trial court failed to hold a hearing regarding the same, as required by Uniform Superior Court Rule 31.3 (B). We find no merit in either of these assertions.

"Even though a defendant is not charged with every crime committed during a criminal transaction, every aspect of it relevant to the crime charged may be presented at trial. This is true even if the defendant's character is incidentally placed in issue." (Punctuation omitted.) *Carroll v. State*.[7] See also *Forrester v. State*[8] ("[a]ny evidence establishing that a defendant has committed the crimes for which he is being tried will inevitably say something about his character") (punctuation omitted). Here, the evidence "concerning the previous drug sales was relevant and material to the drug trafficking and firearm charges to establish [Smith's] connection to the [motel room] and to the large amount of cocaine seized from that location." *Weems v. State*.[9] See also *Evans v. State*[10] ("[t]estimony that [defendant] sold . . . drugs was relevant to the drug trafficking charge to establish that he was involved in dealing drugs and possessed the drugs with the intent to distribute them"); *Forrester*, supra, 255 Ga. App. at 459 (2) (evidence of previous drug sales relevant and admissible at trial on charges of trafficking in cocaine, because it established defendant's connection with the house where the cocaine was seized).

"Furthermore, the [evidence] concerning the previous drug sale[ ] was not similar transaction evidence, and so the [S]tate was not required to comply with the procedural rules set forth in USCR 31.3." *Weems*, supra, 295 Ga. App. at 682-683 (2). Rather, as noted above, this evidence showed the circumstances surrounding the charged offenses and was therefore admissible as part of the res gestae. Id. See also *Hamilton v. State;*[11] *Carroll*, supra, 202 Ga. App. at 547 (2).

(b) Smith next claims that the trial court erred in allowing the narcotics detective to testify as to statements made to him by the informant, because such testimony: (i) violated the Sixth Amendment's confrontation clause; and (ii) constituted inadmissible hearsay. A review of the record, however, shows that the narcotics detective never testified as to statements made to him by the informant; rather, trial counsel objected when the State initially attempted to elicit testimony from the detective regarding a conversation between the informant and Smith's co-defendant, which

---

[7] *Carroll v. State*, 202 Ga. App. 544, 547 (2) (415 SE2d 37) (1992).

[8] *Forrester v. State*, 255 Ga. App. 456, 459 (2) (565 SE2d 825) (2002).

[9] *Weems v. State*, 295 Ga. App. 680, 682 (2) (673 SE2d 50) (2009).

[10] *Evans v. State*, 288 Ga. App. 103, 108 (3) (a) (653 SE2d 520) (2007).

[11] *Hamilton v. State*, 210 Ga. App. 496, 499 (4) (436 SE2d 500) (1993).

132

conversation the detective heard via audio transmitter. During a subsequent discussion with the trial court, all parties agreed that the officer was entitled to testify as to statements he heard, provided that the State laid the proper foundation for the introduction of such testimony. See, e.g., *Escobar v. State*.[12] The State thereafter laid the appropriate foundation and the detective's testimony regarding the statements he heard via the audio transmitter was admitted without objection.

In light of the foregoing, Smith has waived any claim of error on this issue, first by conceding that the testimony was admissible if a proper foundation was laid and then by failing to renew his hearsay objection when the State laid that foundation and introduced the testimony at issue. See *Cline v. State*[13] ("[n]o matter how erroneous a ruling of a trial court might be, a litigant cannot submit to a ruling or acquiesce in the holding, and then complain of the same on appeal") (punctuation omitted); *Evans*, supra, 288 Ga. App. at 106-107 (2). Additionally, at trial "[Smith] failed to object to the admission of [the detective's] testimony as violative of his [Sixth Amendment] right of confrontation and . . . therefore, this alleged . . . violation is not properly considered on appeal." *Treadwell v. State*.[14]

More importantly, and despite Smith's arguments to the contrary, the detective's testimony was not inadmissible hearsay and the trial court properly admitted the same.

> Our cases establish that a witness may testify as to the substance of a conversation he overheard, provided: (1) the witness can identify those who were speaking; and (2) the statements overheard by the witness fall within an exception to the hearsay rule. Both requirements were met in this case, because [the detective] could identify both the [informant] and [Smith's co-defendant] as the persons having the conversation and the statements attributed to [the co-defendant] were admissible as voluntary, incriminating admissions.

(Citations and punctuation omitted.) *Escobar*, supra, 296 Ga. App. at 902 (3).

(c) Nor do we find any merit in Smith's claim that the trial court erred in admitting the police booking photographs of him, taken following his arrest on the night in question.

---

[12] *Escobar v. State*, 296 Ga. App. 898, 902 (3) (676 SE2d 291) (2009).
[13] *Cline v. State*, 300 Ga. App. 615, 617 (1) (685 SE2d 501) (2009).
[14] *Treadwell v. State*, 285 Ga. 736, 739 (1) (a) (684 SE2d 244) (2009).

The State introduced the booking photographs to help prove identity — i.e., to show that Smith was, in fact, one of the two men shown on the video made by the police informant. Specifically, the State used those photographs to show that the clothes Smith was wearing at the time of his arrest were the same clothes worn by the man police identified as Smith on the videotape. Accordingly, the photographs were relevant and admissible. See *Green v. State*.[15] Moreover, despite Smith's assertion to the contrary, "evidence that an accused has been confined in jail in connection with the case at issue does not place his character in evidence." *Goldey v. State*.[16] See also *Taylor v. State*[17] ("[w]e have previously held that admitting a defendant's mugshot into evidence is not reversible error since it does not introduce defendant's bad character").

2. Smith further asserts that he received ineffective assistance of counsel, because his attorney: (a) failed to file a motion to suppress the evidence seized as a result of the warrantless search of the motel room; (b) failed to call Smith's co-defendant as a witness at trial; and (c) failed to object to the allegedly hearsay testimony of the narcotics detective as violative of the Sixth Amendment's confrontation clause.

> To prevail on a claim of ineffective assistance of trial counsel, a defendant bears the burden of showing both that trial counsel was deficient and that he was prejudiced by the deficiency. To demonstrate deficient representation, a convicted criminal defendant must show that counsel's representation fell below an objective standard of reasonableness. Such a defendant must overcome the strong presumption that counsel's performance fell within a wide range of reasonable professional conduct and that counsel's decisions were made in the exercise of reasonable professional judgment. The reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial and under the circumstances of the case. Furthermore, appellate courts are generally reluctant to reverse a case on the ground of ineffective assistance where the complaint urged can reasonably be construed as involving defense counsel's trial strategy.

(Citations and punctuation omitted.) *Brown v. State*.[18] "In reviewing a lower court's determination of a claim of ineffective assistance of

---

[15] *Green v. State*, 219 Ga. App. 878, 880 (3) (467 SE2d 203) (1996).

[16] *Goldey v. State*, 289 Ga. App. 198, 200 (2) (b) (656 SE2d 549) (2008).

[17] *Taylor v. State*, 272 Ga. 559, 561 (2) (b) (532 SE2d 395) (2000).

[18] *Brown v. State*, 293 Ga. App. 633, 634 (1) (667 SE2d 899) (2008).

134

counsel, an appellate court gives deference to the lower court's factual findings, which are upheld unless clearly erroneous; the lower court's legal conclusions are reviewed de novo." (Punctuation omitted.) *Farris v. State.*[19]

(a) Smith's first claim of ineffective assistance ignores the fact that, pretermitting whether law enforcement's warrantless search of the motel room was legal, Smith lacked standing to challenge that search.

> A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises has not had any of his Fourth Amendment rights infringed. Because Fourth Amendment rights are personal, a defendant may move to suppress evidence obtained through an illegal search and seizure only when his own rights were violated. [Thus,] to challenge the search, a defendant must show he had an expectation of privacy in the premises searched.

*English v. State.*[20]

Our case law establishes that an individual has a reasonable expectation of privacy in a motel room only if he or she: (i) is a registered guest of the room in question; or (ii) is staying at least overnight in the room, at the invitation of the registered guest. See *Watkins v. State*;[21] *Smith v. State*;[22] *State v. Carter.*[23] At the motion for new trial hearing, Smith's co-defendant testified that he alone rented the motel room at issue and that Smith was staying in Decatur. On the day in question, however, he was supposed to meet with Smith regarding a potential "music deal." Rather than traveling to meet with Smith in Decatur, he asked Smith to come to the motel for the meeting, and Smith agreed. This testimony showed that Smith was merely a casual visitor to the motel room and, as such, he had no reasonable expectation of privacy in the same. See *Smith*, supra, 284 Ga. at 21 (3) ("a casual visitor, as opposed to an overnight guest, . . . does not have the same expectation of privacy as the renter") (punctuation omitted); *Watkins*, supra, 285 Ga. at 108 (2) ("transient visitor" to motel room does not have a reasonable expectation of privacy in the premises).

"Given that [Smith] had no reasonable expectation of privacy in

---

[19] *Farris v. State*, 293 Ga. App. 674, 675 (667 SE2d 676) (2008).
[20] *English v. State*, 288 Ga. App. 436, 441 (3) (654 SE2d 150) (2007).
[21] *Watkins v. State*, 285 Ga. 107, 108-109 (2) (674 SE2d 275) (2009).
[22] *Smith v. State*, 284 Ga. 17, 21 (3) (663 SE2d 142) (2008).
[23] *State v. Carter*, 299 Ga. App. 3, 5 (681 SE2d 688) (2009)

the room[ ] searched, he was not 'aggrieved' by the search within the meaning of . . . the Fourth Amendment and, thus, lacked standing to contest the legality of the search." *Carter*, supra, 299 Ga. App. at 5.

> Accordingly, a motion to suppress the [evidence seized during the] search . . . would have been futile and [Smith's] claim of ineffective assistance of counsel grounded on the failure to file such a motion is meritless. Failure to pursue a futile motion does not constitute ineffective assistance [of counsel].

(Punctuation omitted.) *Jarrett v. State*.[24]

(b) In support of his claim that trial counsel should have called his co-defendant as a defense witness, Smith cites his co-defendant's testimony at the motion for new trial hearing. At that hearing, the co-defendant testified that he alone bore responsibility for the drugs; that Smith never handled the drugs; and that Smith did not even know there were drugs in the motel room. Trial counsel, however, testified that he elected not to present the co-defendant as a witness, because, given the video evidence that showed Smith handling the cocaine, he did not believe the jury would find the co-defendant's testimony credible.

> It is well established that the decision as to which defense witnesses to call is a matter of trial strategy and tactics, and that tactical errors in that regard will not constitute ineffective assistance of counsel unless those errors are unreasonable ones no competent attorney would have made under similar circumstances.

(Citations and punctuation omitted.) *Watkins v. State*.[25] In this case, we cannot say that trial counsel's decision not to call the co-defendant as a witness was so unreasonable. See *Silvers v. State*[26] (once convicted, a defendant who "seeks to exculpate his co-defendant lacks credibility, since he has nothing to lose by testifying untruthfully regarding the alleged innocence" of his co-defendant) (punctuation omitted); *Rowland v. State*[27] (trial counsel's decision not to call witnesses did not constitute ineffective assistance, "[i]n view of their limited value" to the defense). Indeed, trial counsel's strategic decision on this issue is supported by the order denying the

[24] *Jarrett v. State*, 299 Ga. App. 525, 533 (7) (c) (683 SE2d 116) (2009).

[25] *Watkins v. State*, 285 Ga. 355, 358 (2) (676 SE2d 196) (2009).

[26] *Silvers v. State*, 278 Ga. 45, 48 (3) (597 SE2d 373) (2004).

[27] *Rowland v. State*, 228 Ga. App. 66, 70 (3) (e) (491 SE2d 119) (1997).

new trial motion, in which the trial court specifically found that the co-defendant's testimony regarding Smith's lack of involvement with the drugs was not credible, "based upon [the co-defendant's] criminal history, his bias [resulting from] his friendship with [Smith], and his inconsistent position taken at his own guilty plea [hearing]."

(c) The Sixth Amendment's confrontation clause prohibits the introduction of hearsay evidence concerning testimonial statements made by a third party, "over a defendant's objection[,] where the defendant has had no previous opportunity for cross-examination" of that third party. *Pope v. State.*[28] Here, Smith claims that trial counsel was ineffective for failing to object, on confrontation clause grounds, to the alleged hearsay testimony of the narcotics detective regarding statements made by the police informant and which the detective heard via the audio transmitter. As discussed in Division 1, supra, however, that testimony did not constitute hearsay. Moreover, in his reply brief, Smith appears to concede that the informant's statements were, in fact, not testimonial in nature because, although overheard by police, they were not made to the police. Accordingly, trial counsel's failure to object to this evidence on confrontation clause grounds did not render him ineffective. See *Brown*, supra, 293 Ga. App. at 636 (1) (b).

In light of the foregoing, we affirm the trial court's order denying Smith's motion for a new trial.

*Judgment affirmed. Barnes and Bernes, JJ., concur.*

DECIDED JANUARY 26, 2010 — ■■■■■■■■■■

*Drummond & Swindle, Jason W. Swindle*, for appellant.
*David McDade, District Attorney*, for appellee.

---

[28] *Pope v. State*, 286 Ga. 1, 5 (3) (685 SE2d 272) (2009).